# S E A L E D   P R O C E E D I N G S

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,　　:　10-CR-00288(ILG)
                           :
                           :
                           :
        -against-          :　United States Courthouse
                           :　Brooklyn, New York
                           :
                           :
                           :　Wednesday, January 30, 2019
JOHN DOE,                  :　11:00 a.m.
                           :
        Defendant.         :
                           :
- - - - - - - - - - - - - X

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## S E A L E D   P R O C E E D I N G S

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE I. LEO GLASSER
UNITED STATES SENIOR DISTRICT JUDGE

**S E A L E D   P R O C E E D I N G S**

2

A P P E A R A N C E S:


For the Government: KELLY T. CURRIE, ESQ.
                   United States Attorney
                   Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                   BY:  SOUMYA DAYANANDA, ESQ.
                    Assistant United States Attorney


For the           ALESSANDRA DEBLASIO
Defendant:            229 Broadway
                     Suite 1803
                     New York, New York 10007
                   BY:  ALESSANDRA DEBLASIO, ESQ.


For the Defendant:  LUIS I. GUERRA, P.A.
                     3124 Ponce de Leon Boulevard
                     Coral Gables, Florida 33134
                   BY:  LUIS I. GUERRA, ESQ.


Court Reporter:     VICTORIA A. TORRES BUTLER, CRR
                    225 Cadman Plaza East / Brooklyn, NY 11201
                    VButlerRPR@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcription.

# SEALED PROCEEDINGS

```
                          Proceedings                    3
```

1              (In open court.)

2              (Judge I. LEO GLASSER enters the courtroom.)

3              THE COURTROOM DEPUTY:  All rise.

4              Please be seated.

5              (Pause in the proceedings.)

6              THE COURTROOM DEPUTY:  We are waiting for the

7    Marshals.

8              THE COURT:  While we are waiting for Mr. Velandia, a

9    motion has been made to seal the courtroom for these

10   proceedings.

11             Does the defendant want to be heard with respect to

12   that?

13             MS. DeBLASIO:  Thank you, Your Honor, and good

14   morning.  Alessandra DeBlasio.

15             Nothing in particular beyond my request.  We just

16   want it to be just like this, where nobody else comes in.  So

17   with us today is Mr. Caicedo's brother, who wrote a letter to

18   Your Honor as part of our sentencing package.  And another

19   attorney of his.

20             THE COURT:  His what?

21             MS. DeBLASIO:  An attorney of his.  She only speaks

22   Spanish, so she doesn't understand.

23             THE COURT:  You say she is an attorney?

24             MS. DeBLASIO:  Yes, she is, yes.  And he is a

25   brother.

# SEALED PROCEEDINGS

Proceedings                                                    4

1        THE COURT:  And who is she an attorney for?

2        MS. DeBLASIO:  For Mr. Caicedo.

3        THE COURT:  We will wait for Mr. Velandia to come

4   in, but seeing as how there is nobody in the courtroom, in any

5   event, the submission by the defense to have the courtroom

6   sealed -- I think you are familiar with it?

7        MS. DAYANANDA:  Yes, Your Honor.

8        The Government takes no position.  As Your Honor is

9   aware, to actually have a Government request of sealing the

10  courtroom, we go through the DOJ.  We did not find a basis to

11  make that request for this particular defendant, given the

12  course of the history of this case.

13       So we took no position as far as sealing the

14  courtroom.  We will ask that the actual proceeding be sealed,

15  as we usually do, in cooperating cases.

16       THE COURT:  Well, the defendant feels quite strongly

17  that there is a serious risk to his safety and the safety of

18  his family.

19       MS. DAYANANDA:  I understand that, Your Honor.  Some

20  of those risks, I think, are mitigated by the fact that, one,

21  this case has not been under seal the entire duration, which

22  is a consideration.  It is listed by his real name.  It's

23  never been a John Doe.  As well as the risk articulated by the

24  defense ██████████████████████████████████████████████

25  ████████████████████████████████████.  Literally, the case

Victoria A. Torres Butler, CRR
Official Court Reporter

# SEALED PROCEEDINGS

Proceedings                              5

1   is summing up.

2           Mr. Caicedo was never called as a witness; 14

3   cooperating witnesses took the stand in that case.  So we just

4   did not have a basis to make that request to main justice.

5           THE COURT:  As I understand it, this request only

6   pertains to the sentence itself; that is, he is concerned

7   about public knowledge regarding the date upon which Mr. -- is

8   it Velandia or Caicedo?

9           MS. DAYANANDA:  Caicedo.

10          THE COURT:  Well, that is his concern.

11          MS. DAYANANDA:  I understand that, too, Your Honor.

12  I still don't share that same concern.  The defendant has had

13  an ongoing case in the Middle District of Florida where

14  everything has been on the record as well.

15          THE COURT:  Deal with the fact that there is nobody

16  in the courtroom anyway, except members of the defendant's

17  family, it is rather academic.

18          MS. DAYANANDA:  Sure.

19          THE COURT:  I will not deal with that any further.

20          MS. DeBLASIO:  Thank you, Your Honor.

21          THE COURTROOM DEPUTY:  Criminal cause for

22  sentencing, the United States versus Luis Agustin Caicedo

23  Velandia.

24          Counsel, please state your appearances for the

25  record and come forward.

**SEALED PROCEEDINGS**

Proceedings                                    6

1      MS. DAYANANDA:  Good morning, Your Honor.

2      Soumya Dayananda for the Government.  Along with me

3   at counsel table is Jess Kennedy from HSI and Michelle Murphy

4   from U.S. Probation.

5      THE COURT:  Good morning.

6      S.A. KENNEDY:  Good morning, sir.

7      USPO MURPHY:  Good morning, Your Honor.

8      MR. GUERRA:  Good morning, Your Honor.

9      Luis Guerra and Alessandra DeBlasio on behalf of

10  Mr. Caicedo, who is present in the courtroom, being assisted

11  by the interpreter.

12      THE COURT:  Are you ready to proceed, Mr. Guerra?

13      MR. GUERRA:  Yes, Your Honor, we are.

14      THE COURT:  You have reviewed the Pre-Sentence

15  Report with your client?

16      MR. GUERRA:  We have, Your Honor.

17      THE COURT:  You take no exception to it that I am

18  aware of?

19      MR. GUERRA:  None, Your Honor.

20      THE COURT:  So I will adopt the Pre-Sentence Report

21  in its entirety.

22      I think the guideline is a 45, a 20-year maximum

23  sentence.

24      MS. DAYANANDA:  That's correct, Your Honor.

25      THE COURT:  So the guidelines are academic.

**S E A L E D   P R O C E E D I N G S**

Proceedings                                    7

1       MS. DAYANANDA:  Correct.

2       THE COURT:  If you want to be heard, I will be happy

3   to hear you.

4       MR. GUERRA:  Thank you, Your Honor.

5       As I indicated, Your Honor, Ms. DeBlasio is with me

6   and we're co-counsel on behalf of Mr. Caicedo.  After I make a

7   brief statement, perhaps she may want to address the Court as

8   well, and I know that at the appropriate time Mr. Caicedo does

9   want to address the Court.

10       Your Honor, as the Court is aware, 3553 requires

11   that the Court take into consideration the nature and

12   circumstances of the offense, and the history and

13   characteristics of the offender.

14       I think it's important that we note at the outset

15   that this offense is a money laundering offense.  It is not

16   the drug trafficking offense.  The trafficking offense, as the

17   Court is aware, was handled in the Middle District of Florida,

18   by another judge, Judge Whittemore, and after Mr. Caicedo

19   cooperated, he received his sentence in that matter and we

20   are --

21       THE COURT:  Mr. Guerra, I just do not really want to

22   interrupt you unnecessarily, but a prerequisite for money

23   laundering is that the source of the funds is criminal

24   activity.  That is a prerequisite for money laundering.  So

25   there is a very significant consideration, the fact that the

# SEALED PROCEEDINGS

Proceedings                                            8

1   money is derived from drug trafficking.

2           MR. GUERRA:  I understand that, Your Honor.  And my

3   prelude, really, was in response to the Government's 5K1

4   letter because we've, the prosecutor and I, have taken

5   different positions on this case from the get-go.  I do

6   believe that the cooperation that Mr. Caicedo gave in the

7   Tampa case should be considered by Your Honor because, as I

8   see it, it is one case.  It's two charges; one was separated

9   and taken to Tampa, and one was separated and kept here.

10  ████████████████████████████████████████████████████████

11  ███████████████████████      ███████████████████████████

12  ███████████████████████████████████████████████████████████

13  █████████████████████████████████████████████████████

14  █████████████████████████████████      ████████████████████

15  ██████████████████████████████████.

16          We are in the position, because of this separation

17  of counts, if you will, that the Government is saying that you

18  shouldn't consider cooperation that he gave in Florida.  We

19  believe you should because we do believe it's one case.

20          But because of this dispute that I've had with the

21  prosecution from the beginning of this case, I did want to

22  make that point; that technically, we are here on the money

23  laundering case.

24          Now, yes, they are one and the same.  In my opinion,

25  it's the same conspiracy.  Same conspiracy, period.  Same

# SEALED PROCEEDINGS

Proceedings                              9

1   co-conspirators.  It's the identical case.

2              But the Department of Justice decided to separate it

3   and, obviously, they have the right to do that, but I believe

4   that when you're going to judge a man, he should be -- I

5   should be able to present to you everything he's done in favor

6   of the Government, because it is the same U.S. Government, and

7   the Court should take it all into consideration, not just the

8   cooperation that he did in New York, which was extensive in

9   and of itself.

10             So my reasoning for indicating that was for that

11  reason.  But that being said, Your Honor, let's talk a little

12  bit about the Tampa case, because I met Mr. Caicedo about nine

13  years ago when he was first arrested and he began his

14  cooperation with the Government.  It's the U.S. Government.

15             Mr. Kennedy, who is from Department of Immigration

16  and Customs Enforcement was in Tampa.  We were working

17  primarily with DEA at the time and Mr. Caicedo made a number

18  of cases.  There were maritime seizure cases.  There were

19  indictments of co-conspirators and of narcotics traffickers.

20             He was able to forfeit $113 million to the

21  Government, to the Colombian Government and the

22  U.S. Government.  He cooperated extensively and he was in a

23  day-to-day cooperation, meetings, with the prosecution in

24  Tampa.

25             To protect his identity he was kept under a

# SEALED PROCEEDINGS

Proceedings                                            10

1    different name and he was kept in isolation.  For the first

2    14 months of his incarceration he was in solitary confinement.

3           After everything was said and done, and it was

4    presented to the judge in the Middle District of Florida on a

5    re-sentencing, the judge decided that his cooperation merited

6    a time-served sentence, and he received a time-served sentence

7    in Florida.

8           He was then brought to New York and we began a

9    second phase of cooperation, which is detailed in the

10   Government's 5K1 letter.  That second phase of cooperation,

11   Your Honor, began almost the day we got here.  We signed a

12   cooperation agreement with the prosecution and Mr. Caicedo has

13   never wavered in his cooperation.

14          In fact, I think pages 6, 7 and 8 of the

15   Government's 5K1 motion outline -- I think there are 11

16   indictments, 15 individuals, who have been charged from

17   information specifically given by Mr. Caicedo.

18   ████████████████████████████████████████

19   ██████████████████████████████████████████

20   ████████████████████████    ██████████████

21   █████████████████████████████████

22   █████████████████████████████████

23   ████████████████████████████████████

24   ██████████  ████████████████████████████████

25   █████████████████████████████████.

# SEALED PROCEEDINGS

Proceedings                                                      11



# SEALED PROCEEDINGS



Proceedings                                                      12

24          Nevertheless, Mr. Caicedo has never, ever wavered in

25  his cooperation, Your Honor.  He has always been available for

# SEALED PROCEEDINGS

Proceedings                                    13

1  the Government.  The prosecution in this letter says that his

2  cooperation is complete and that his cooperation is truthful.

3         And so in terms of what he has done since his

4  arrest, almost nine years ago, is he's cooperated consistently

5  with the U.S. Government.  I don't believe we should be

6  dividing the cooperation in Florida with that here in

7  Brooklyn.  But even if you did that, Judge, even if you just

8  considered what the prosecution has put in this 5K1 memo, it's

9  extensive and it's against various individuals, two of whom

10  are extremely dangerous persons.

11         So I don't know what to say about his cooperation

12  other than it's remarkable.

13         I do want to address the issue of disparate

14  sentences, because there's another issue, another dispute that

15  we had with the Government from the get-go, is what role

16  Mr. Caicedo should have.  They believe he's the ultimate

17  maximum leader and everyone else is below him.

18         We believe that Mr. Lozano, Julio Lozano, and

19  Mr. Caicedo, who the PSR indicates are co-leaders.  Mr. Lozano

20  and Mr. Caicedo are on the same level, and I want to explain

21  to the Court why.

22         The original founding father, if you will, of this

23  drug trafficking organization was a guy named Gustavo Lozano.

24  Gustavo Lozano, the prosecution notes, and admits to, is the

25  person who initiated the trafficking organization.  He then

# SEALED PROCEEDINGS

Proceedings                                    14

1   brought in his nephew, Julio, at the age of 20.  You know

2   this, Judge, because you sentenced Mr. Lozano, I think two or

3   three years ago.  Mr. Lozano began to work with his uncle

4   Gustavo for years and then they brought in Mr. Caicedo.

5                THE COURT:  You speak of Lozano is that Pirateque?

6                MR. GUERRA:  Yes, sir.

7                MS. DeBLASIO:  Yes.

8                MR. GUERRA:  Mr. Pirateque, Lozano Pirateque.  When

9   Mr. Caicedo was brought in, he was brought in by Gustavo, and

10  then Mr. Caicedo and Mr. Lozano begin to run the organization.

11  And I do agree that they were co-leaders, but Mr. Lozano,

12  Julio Lozano, controlled the routes through Mexico and

13  Guatemala.  Mr. Caicedo controlled the operations of the

14  organization in Colombia.

15               Mr. Lozano and Mr. Caicedo each reap 50 percent,

16  50/50 percent of the profits of this organization up until the

17  day the Government took it down.  Up until that day,

18  Mr. Lozano and Mr. Caicedo were 50/50 partners.  At that point

19  in time, when the organization is taken down, the Government

20  makes and announces and puts Mr. Caicedo as the maximum

21  leader.

22  ████████████████████████████████████████

23  ████████████████████████████████████████████

24  ██████████████████████████████████████████████

25  ████████████      ████████      ████████████

Victoria A. Torres Butler, CRR
Official Court Reporter

# SEALED PROCEEDINGS

Proceedings                                          15

1 ███████████████████████████████████

2 ████████████████████████  ████████████

3 ██████████████████████████████████████████

4 ████████████████████████████████████████

5 ██████

6              So we are asking the Court to grant the Government's

7 5K1 motion.  We thank the Government for meeting its agreement

8 with us and filing the motion.  We believe you should consider

9 everything he's done from the day he was arrested almost nine

10 years ago and we believe that a time-served sentence,

11 Your Honor, in this case is appropriate for the reasons that

12 I've mentioned.

13              If you have any questions for me or my co-counsel,

14 Your Honor.  But Mr. Caicedo would like to address the Court

15 at some point.

16              THE COURT:  I will get to Mr. Caicedo eventually.

17              MS. DeBLASIO:  Thank you, Your Honor.

18              I have nothing to add, so unless Your Honor has any

19 questions, but the memo was extensive and we've said our

20 peace.

21              THE COURT:  Thank you, very much.

22              Ms. Dayananda?

23              MS. DAYANANDA:  Your Honor, I just want to address a

24 few things.

25              As counsel notes, this is obviously the Government's

**SEALED PROCEEDINGS**

Proceedings                                            16

1   motion for a 5K.  There is no dispute the defendant has
2   provided substantial assistance.  That's not a point of
3   contention here.  What I do think should be considered are a
4   few things.

5        First, considering the cooperation versus his actual
6   criminal conduct.  And I think that, with all due respect,
7   counsel is conflating the two concepts.  Understandably, the
8   criminal conduct of running this drug network drives up the
9   money laundering guidelines.  That's the criminal conduct.

10       I understand how it's related, as Your Honor pointed
11  out at the beginning of this.  That is separate from the
12  cooperation he provided and that was considered by the Middle
13  District of Florida.

14       I think also, as part of this backdrop of the prior
15  case, the Middle District of Florida functions very
16  differently from here in the Eastern District.  They operate
17  as what they call a rocket docket.  So at the time he was --
18  he pled guilty to a cooperation agreement in Florida.  Two
19  months later he was originally sentenced.  And that was the
20  judge considering just those two months of cooperation that
21  was provided.

22       I know the sentencing transcript was provided to
23  Your Honor, and the judge there noted that it was rare
24  cooperation at that time.  Again, it's district by district.
25  It's very different so.  At that point in time his guidelines

**S E A L E D   P R O C E E D I N G S**

Proceedings                              17

1   were, I think, close to 30 years, because of the obvious drug

2   amounts that he's responsible for, and then it was cut to ten

3   years.

4           So for two months of cooperation, he was sentenced

5   to ten years, and that was in 2012, I believe.  2011.  And

6   then a few years later, this is after he comes to the Eastern

7   District of New York, a Rule 35 was submitted in the Middle

8   District of Florida, and he was sentenced to time served.

9           So it's a very different process of how it works

10   there in Florida and it's -- the cooperation is separate from

11   what he did here in New York.  It's almost an academic point

12   because, again, he is getting a 5K here.  But for Your Honor

13   to consider the cooperation twice, simply does not make sense

14   or comport with logic here, is the point that the Government's

15   making here in the Eastern District.

16           THE COURT:  How else, what more cooperation could

17   this defendant have been giving with respect to the money

18   laundering?  Wouldn't it essentially have been what it is that

19   he informed the Government about in connection with the

20   indictment in Florida?

21           MS. DAYANANDA:  There's nothing more, Your Honor.

22   Obviously, you are considering him in his entirety.  But what

23   the point is, is that it's -- the agreement was at the

24   beginning, which is why it was not Rule 20'd, was that the

25   cooperation would be considered differently.  That's the point

# SEALED PROCEEDINGS

Proceedings                                    18

1    the Government is trying to make here.

2              THE COURT:  I understand the point that you are

3    trying to make, Ms. Dayananda, but it is not persuasive.

4              MS. DAYANANDA:  I understand that, Your Honor.  And

5    again, I understand that it's academic because he's getting

6    the 5K.

7              It would be a different position if I was saying he

8    didn't earn his 5K here in the Eastern District to just

9    disregard what he did for the Middle District of Florida.  But

10   I do think it's important to be precise as to what's being

11   presented in front of Your Honor.  And I think a portion of

12   the defense submission has already been considered by the

13   Middle District of Florida is one part of my argument of the

14   letter.

15             Secondly, in terms of the leadership of this

16   particular defendant, counsel is arguing that Julio Lozano

17   Pirateque is first in leadership and there is nothing to

18   indicate in terms of what a leader is in terms of the

19   decision-making authority of this organization, that that was

20   held by Julio Lozano Pirateque.

21             Was he a 50/50 profit earner?  Yes.

22             Was he a partner?  But by all accounts, including by

23   the Government's calling it the Don Lucho organization, it's

24   this defendant who was the leader of the organization itself.

25             So the factual argument that counsel is making that

# SEALED PROCEEDINGS

1  ███████████████████████████████████████████████

2  ███████████, it's not based in the actual facts of how these

3  top-level people were operating the organization.  And I think

4  that's very important to understand.  Because you can't really

5  have it both ways; you can't say the Chapo Guzman indictment

6  had a portion called the Don Lucho organization which was

7  based upon the ledgers.  That was called the Don Lucho portion

8  of the indictment because he's the leader.  It wasn't called

9  the Julio Lozano organization.

10         In Colombia, by the folks who were indicted and

11 associated with this organization, everybody would say Don

12 Lucho is the head of the organization.

13         Was Julio Lozano one of the partners?  Yes, but the

14 decision making was held by this defendant.

15 ███████████████████████████████████████████

16 ███████████████████████████  ███████████████████

17 ████████████████████████████████████████

18 ██████████████████████████████████████████████

19 █████████  ████████████████████████████████████████

20 ██████████████████████████████████████████████████

21 ██████████████████████████████████

22         So those are the three points I wanted to make to

23 Your Honor in terms of, again, his leadership as well as the

24 past cooperation.

25         THE COURT:  Why was Mr. Caicedo not indicted in

# SEALED PROCEEDINGS

Proceedings                                    20

1    Florida, for money laundering in Florida?  And for the

2    trafficking offense in Florida?

3              MS. DAYANANDA:  It's a complicated answer,

4    Your Honor.  I think that there was --

5              THE COURT:  I have patience.

6              MS. DAYANANDA:  So one kind of explanation is based

7    upon the evidence that we had at the time and the agreements

8    of who -- without getting into kind of a bigger thing, it's

9    more so who we had as cooperating witnesses versus who Florida

10   had as cooperating witnesses who could indict this particular

11   defendant.

12             So in terms of kind of a compromise between the two

13   districts, Middle District of Florida indicted him on the

14   drugs and we indicted him on the money.  It happens somewhat

15   frequently in this world where there's a few districts who

16   have particular high-level targets.  So there's a process we

17   go through to decide who will indict on what charges.

18             THE COURT:  Did I sentence Mr. Otalora?

19             MS. DeBLASIO:  Yes, Your Honor.

20             MS. DAYANANDA:  Otalora?

21             THE COURT:  Yes.

22             MS. DAYANANDA:  Yes.

23             THE COURT:  What did I sentence him to?  I do not

24   remember what his role was.  I sentenced him to a term which

25   was in excess, I think, just about every other defendant in

# SEALED PROCEEDINGS

Proceedings                                                    21

1   this case.

2           MS. DAYANANDA:  Let me make sure you were the one

3   who sentenced him.

4           THE COURT:  ████████████████████████████████████

5   ████████████████████████████████   ████████████████

6   ██████████████████████   ████████████████████████████

7   ████████   ████████████   ████████████   A lot of these names are

8   familiar.  I do not know whether they are familiar because

9   they are persons I sentenced, or because I was dealing with

10  this indictment over a number of years.

11          MS. DAYANANDA:  Your Honor, I'm not sure if that

12  particular indictment was in front of you, but I believe his

13  role is significantly less than this particular defendant.

14          THE COURT:  Otalora?

15          MS. DAYANANDA:  Yes.

16          THE COURT:  He was sentenced to significantly more

17  than virtually everybody else.

18          Do you have the probation officer's addendum?

19          MS. DeBLASIO:  I do.  I have two copies.

20          And, Your Honor, I might be able to speak to that.

21  There was one typo on the addendum which is a little

22  confusing.  All of those names you mentioned, you did not

23  sentence all of those others.  They were in a case which was

24  10-225.

25          THE COURT:  Okay.

# SEALED PROCEEDINGS

Proceedings                                    22

1     MS. DeBLASIO:  This case, you are correct.  You've

2     sentenced -- this is the third.  So the leaders.  You have all

3     the leaders, Your Honor.

4          THE COURT:  Who was the third?  I have Lozano

5     Pirateque.

6          MS. DeBLASIO:  You had Lozano Pirateque and Otalora.

7          MS. DAYANANDA:  You did have Otalora, yes.

8          MS. DeBLASIO:  But the fourth one, Barrera Barrera

9     they sent to Southern District of New York.  So he's done.  So

10    Your Honor gets three of them.

11    ████████████████        ██████████████████████

12    ██████████████████████████████████████████████

13    ████████████████████████████████████████████████

14    ████████████████████████████████████████████████

15    ██████████████████████████

16         THE COURT:  Mr. Caicedo, is there something you

17    would like to say to me in mitigation of sentence?

18         MS. DeBLASIO:  I believe he does want to read a word

19    of apology, Your Honor.

20         THE DEFENDANT:  First of all, I would like to

21    apologize to Your Honor, to the prosecutor, and the American

22    people.

23         I, Luis Caicedo, assume my responsibility for the

24    crimes and the errors that I made.  In this time that I've

25    been in jail, I have had the time to reflect on the

# SEALED PROCEEDINGS

Proceedings                                    23

1   irreparable harm that I've caused society.  Because of that,

2   for the rest of -- for every day of the rest of my life, I

3   will have that on my conscience.

4           I am conscious of the punishment that I deserve and

5   I am assuming this with maturity and responsibility.  I would

6   ask God to forgive me, my family and members of humanity who

7   were the victims of my poor decisions and actions.  I would

8   ask you to give me a chance to revindicate myself with

9   society, my family.  I would ask you for a chance to be

10  reunited with my family once more.

11          Thank you.

12          THE COURT:  I read the transcript of your sentence

13  in Florida by Judge Whittemore.

14          Were you the attorney?

15          MR. GUERRA:  I was not, Your Honor.  I was there,

16  but I was not the attorney at the time.

17          THE COURT:  So you heard everything that Judge

18  Whittemore had to say to Mr. Caicedo?

19          MR. GUERRA:  Yes, Your Honor.

20          THE COURT:  Do you think there is very much that I

21  can add to that?

22          MR. GUERRA:  I don't think so, Your Honor.

23          THE COURT:  Did you read the transcript?

24          MS. DAYANANDA:  I did, Your Honor.

25          THE COURT:  Of that sentencing?

# SEALED PROCEEDINGS

Proceedings                                    24

1        MS. DAYANANDA:  I did.

2        I did not read the Rule 35 transcript.  I did not

3   receive a copy.

4        THE COURT:  I did not read the Rule 35 motion

5   either.  I just read Judge Whittemore's rather extensive

6   observations at the time he sentenced Mr. Caicedo.

7        Mr. Caicedo, I was listening very carefully to what

8   you have just said to me.  You are now 52 years old, yes?

9        THE DEFENDANT:  Yes.

10        THE COURT:  And the time period during which all of

11   this activity was engaged in, you were in your 30s, 40s.  You

12   were not a child.  You were an adult.  And you tell me this

13   morning that it was not until you were confined and had time

14   to think of how bad what you were doing was.

15        Would you expect me to really believe that,

16   Mr. Caicedo?  Would you?

17        Would you lead me to believe, expect me to believe

18   that being the leader of a huge business, a billion dollar

19   business, you had no idea what it was that you were involved

20   with?

21        You knew that you were dealing with huge quantities

22   of cocaine; 880,000 kilograms of cocaine.  You had ships and

23   submarines and airplanes and living very, very luxuriously,

24   I'm sure, in beautiful homes with big cars, and you are

25   telling me this morning it was not until you were locked up

# SEALED PROCEEDINGS

Proceedings                                      25

1   that you began to understand how serious what you were doing

2   was.

3             MS. DeBLASIO:  Your Honor, if I might?  I think of

4   course you're absolutely right.  I do want to say this was a

5   slightly unusual organization in that they didn't live the

6   luxury and have all of the flash of some of these other

7   horrible traffickers.  But there's no question he knew what he

8   was doing.  And I don't think it just took prison.

9             THE COURT:  Pardon?

10            MS. DeBLASIO:  He said that, but Your Honor's

11   correct.

12            THE DEFENDANT:  Right.

13            THE COURT:  Now the question is why?

14            MS. DeBLASIO:  I question that...

15            THE COURT:  I received a letter ████████████████████

16   ██████, in which somewhere in the letter he said that you

17   were brought up in a very nice family.  Your father owned a

18   garage, fixed automobiles, and they taught you to live

19   respectably and honestly.

20            And looking at you, one would think you were an

21   altar boy.  Looking at you, I am trying to picture you as the

22   leader of a large trafficking organization that had hundreds

23   if not thousands of people working for you, transporting drugs

24   through Colombia, through Mexico, in ships, in cars.  Having

25   very violent men like Morentiz (phonetic) working for you,

# SEALED PROCEEDINGS

Proceedings                                         26

1   spending time trying to locate who was robbing money from your

2   warehouses and kidnapping and murdering them when they were

3   found.

4           And you are telling me this morning you did not know

5   until you were in prison how terrible what you were doing was

6   all about.

7           THE DEFENDANT:  I know.  I do know.

8           THE COURT:  Now, everything that Mr. Guerra said on

9   your behalf, very eloquent.  He is a very good lawyer, very

10  articulate.  He said all the things a defense lawyer says at a

11  time like this; he spends 15, 20 minutes telling the Court

12  about how wonderful you were, you were cooperating with the

13  Government.  And after you listen -- and I have been at this

14  now for 30 some-odd years and I have the same reaction every

15  time I hear these speeches -- I wonder whether I should pin a

16  medal on the defendant who is standing before me for all the

17  wonderful things he did; cooperated with the Government; he

18  cooperated with the Government because he made a very quick

19  cost/benefit analysis and he really quickly figured it out

20  that if he cooperated, he might get some benefits in terms of

21  a sentence.

22          That is the equation that you worked out in your

23  head almost immediately, being very smart leader of a

24  multimillion dollar organization that you were.

25          I am sorry, Mr. Guerra.  I am sure you have heard

**SEALED PROCEEDINGS**

Proceedings                                    27

1   this more than once before.

2          MR. GUERRA:  Your Honor, I am sure you have heard

3   that. ███████████████████████████████████████████

4   ███████████████████████████████████    ███████████

5   ███████████████    █████████████████████    ████████

6   ████████████████████████████████████████████████████

7   ███████.  It is a cost/benefit analysis, obviously,

8   Your Honor.  We have heard that.  I'm sure you have heard this

9   speech as well. ██████████████████████████████████

10  ██████████

11         That said, I think he may have misspoken.

12  Obviously, he knew from the get-go that what he was doing was

13  illegal and improper, and perhaps he's nervous today and

14  that's why he's not explaining that to Your Honor.  But he

15  knew.  You know, he knew.

16         THE COURT:  Of course he did, Mr. Guerra.

17         And what you say to me has been troubling me and

18  probably has troubled every other Federal Judge who is called

19  upon to grant the Government's motion pursuant to 5K1.  One of

20  the 5K1 factors the Court has to consider is the extent of his

21  cooperation.  The only person who can tell me about that is

22  the Government.  Obviously, the defendant will picture the

23  extent of one's cooperation in the most glorious, rose-colored

24  terms.  The Government tells me what the extent of his

25  cooperation was, as in their determination it was.  I do not

# SEALED PROCEEDINGS

Proceedings                                                28

1   think the Government is in any way minimizing the extent of

2   Mr. Caicedo's cooperation.

3           As I read the Government's letter, and all of the

4   defendants against whom he cooperated.  The Government is not

5   minimizing it.

6           What is troubling is the extent to which all of that

7   impinges upon the sentence.  Obviously, I know, the Government

8   knows, the agent knows, that if it were not for the Caicedos,

9   they might never have solved serious crimes.  They rely

10  heavily upon informants.  They rely heavily upon cooperators.

11          And the sad fact of the matter is that the higher up

12  you are in the criminal organization, the better off you are.

13  It is only the Caicedos of this world that can tell the Court

14  what it is and can tell agents, such as Mr. Kennedy and all of

15  the agents who do this very, very important and dangerous and

16  serious work, what it is that the street level drug dealer

17  could not tell you.

18          The street level drug dealer could not tell

19  Mr. Kennedy about 880,000 kilograms of cocaine and how it

20  traveled through Central America and Mexico, Guatemala,

21  Honduras.  I have heard all of that.

22          But a kid from the projects who is selling 50 grams

23  of cocaine faces a mandatory minimum of 60 months.  He has not

24  got any information which is helpful to the Government.  What

25  does he know?  Somebody gives him a couple of cellophane bags

# SEALED PROCEEDINGS

Proceedings                                                    29

1  with heroin or cocaine and he gets caught, also with the

2  assistance of some cooperator, some informant, but he cannot

3  cooperate.  He has nothing to cooperate with.

4          But here I have Mr. Caicedo, and I have someone

5  making this enormously articulate speech about him, how

6  wonderful he is, how wonderful the cooperation was, and I

7  think as I am listening to all of this, how do I distinguish

8  Mr. Caicedo from a Mr. Lugano, who is a kid from

9  Bedford Stuyvesant who is caught selling five grams of

10 cocaine, and the Government is going to tell me there is a

11 mandatory minimum of 60 months, and I cannot do a thing about

12 it because it is a mandatory minimum; right?

13          MR. GUERRA:  Yes, sir.

14          THE COURT:  Okay.

15          The other significant aspect which is troubling, but

16 I cannot ignore it, is that 3553 of Title 18 of the

17 United States Code tells the Court what it should be

18 considerate of is disparity in sentencing, which is why I have

19 looked at the sentences that all of the other defendants in

20 this case got and most of them got time served; 30 months.  If

21 I am to pay attention to the disparity, the observation which

22 3553 makes, and it has merit, although I can spend a little

23 time on that as well, I have always thought that it is not

24 terribly convincing or persuasive for me to sentence

25 Mr. Caicedo because of what I sentenced Mr. Smith.

# SEALED PROCEEDINGS

Proceedings                                                    30

1           I cannot look at people in precisely the same way as

2    God might have looked at people and created them.  Mr. Caicedo

3    was not Lozano.  He is not Otalora.  He is not any one of the

4    12 other people in this case.  He has a different background.

5    He has a different history.  He has different motivations.  He

6    is smarter, knew better.  Why should I treat him in exactly

7    the same way as I treated somebody else who may not have had

8    the same education and the background as he?  But that is what

9    the statute says I should do; right?

10          MS. DAYANANDA:  That's correct, Your Honor.

11          THE COURT:  The other interesting part of all this

12   is, in fact, this is different than the Miami case.  He is not

13   being prosecuted here for drug trafficking.  It is a money

14   laundering case.  So you think of the drug trafficking

15   sentence as relevant conduct.  But he was sentenced for that

16   already.

17          So if I take that into account now, am I

18   double-counting?  Am I sentencing Mr. Caicedo again, in

19   effect, for what Judge Whittemore sentenced him for in Tampa

20   or wherever he was; right?

21          That is a legitimate consideration for me.  Am I

22   sentencing him twice?  Taking into consideration twice what he

23   has already been sentenced for?

24          This is money laundering.  It is a financial crime;

25   right?  And you have the difficult problem of the guidelines

# SEALED PROCEEDINGS

1   increasing a sentence based upon the amount of money involved.

2   I often think of how illogical the guidelines are by using the

3   bank robbery illustration.

4           A fellow walks into a bank and he points a gun at a

5   teller and says give me your money and the teller empties the

6   draw and gives him the money.  It's $5,000.  The next fellow

7   walks in, does the same thing, points a gun at the teller and

8   he walks out with $50,000.  He is sentenced much more

9   significantly than the fellow who walked out with 5.  Neither

10  one of them knew how much they were going to be walking out

11  with.  The crime was not how much money they walked out with,

12  the crime was bank robbery.  They both committed the same

13  crime.

14          And the same is true, to some extent, with money

15  laundering.  The guidelines increase significantly by how much

16  money was laundered; right?

17          So, Mr. Caicedo, you were not being very open and

18  truthful this morning in telling me you did not know what you

19  were doing; you did not understand that you were poisoning,

20  participating in poisoning a lot of people who were using

21  cocaine that was made available to them because you were

22  sending it here.  That is what you were guilty of.  It is not

23  just cocaine.  It is what the cocaine was doing to families; a

24  husband and father was addicted to cocaine, you made it

25  available to him.  That is what you were a part of.  That is

# SEALED PROCEEDINGS

Proceedings                                                      32

1    what you are guilty of.  He has been sentenced already or

2    served already more than any of the other defendants in this

3    case.

4    ████████████████████████████

5    ████████████        █████████████

6    ████████    ███████████          ███████

7    ████████████████████████████████

8    █████████████        ███████████████

9    ████████████████████

10        THE COURT:  I am going to sentence Mr. Caicedo

11   Velandia to time served, which is in excess of a hundred

12   months.  I think it is 109 months.

13        MS. DeBLASIO:  120.

14        THE COURT:  I do not see any useful purpose in

15   imposing supervised release.  I think the guidelines say that

16   given deportation.

17        MS. DeBLASIO:  Right.

18        THE COURT:  In any event.  Let me add three years of

19   supervised release as a condition of which I want Mr. Caicedo

20   Velandia to know that if you are deported, do not come back to

21   this country again, unless you have the permission of the

22   United States to come back here.

23        There are about 15 open counts, I think.

24        MS. DAYANANDA:  The Government dismisses them at

25   this time.

# SEALED PROCEEDINGS

Proceedings                                    33

1    THE COURT:  I think there were 16 counts and he
2    pleaded guilty to Count 1.

3    MS. DAYANANDA:  Count 1, Your Honor.  So, Counts 2
4    to 16, the Government dismisses at this time.

5    THE COURT:  Oh, the open counts motion to dismiss is
6    granted.

7    There is a special assessment of $100.  I am
8    imposing a fine of $25,000.

9    It is interesting to speculate, I frequently do,
10   with respect to these cases how much money is available to
11   Mr. Caicedo given how much money has been taken in by his drug
12   activity.  They could not -- it could not have all been spent.

13   So $25,000 should be paid rather quickly.

14   Is there anything I am forgetting except, I suppose,
15   I am obliged to tell Mr. Velandia he has the right to appeal
16   his sentence, though goodness knows what it is he would be
17   appealing, but he should be informed that if he cannot afford
18   the cost of an appeal, he can make an application to have that
19   cost waived.

20   Ms. Dayananda, is there anything else I am
21   forgetting, I am overlooking?

22   MS. DAYANANDA:  I do not think so, Your Honor.

23   THE COURT:  Mr. Guerra, is there anything that I am
24   overlooking as far as your part of this case?

25   MR. GUERRA:  No, Your Honor, but Ms. DeBlasio wants

# SEALED PROCEEDINGS

Proceedings                                          34

```
 1   to address the Court.

 2            MS. DeBLASIO:  Your Honor, if I might.

 3   ████████████████████████████████████████████

 4   ████████████████████████████████████████████

 5   ████████████████████████████████████████████

 6   ████████████████████████████████████████

 7   █████████████████████

 8            THE COURT:  Well, I think the Probation Department

 9   will take care of that.

10            MS. DeBLASIO:  Okay.  If I can do that there --

11   ████████  ██████  ████████████

12   ██████████████████████████████████████████

13   ██████████████

14         ██████████  ██████████████████████

15   ███████████████████

16            THE COURT:  Yes, okay.

17            MS. DAYANANDA:  We will take care of that.

18            THE COURT:  Is there anything else?

19            MS. DAYANANDA:  No, Your Honor.

20            MR. GUERRA:  No, Your Honor.

21            MS. DAYANANDA:  We are grateful, thank you,

22   Your Honor.

23            THE COURT:  I am told there is something else.

24            THE COURTROOM DEPUTY:  I believe there was an

25   application to seal the judgment and the minute entry for
```

# S E A L E D   P R O C E E D I N G S

1    today.  I am not certain.

2              MS. DAYANANDA:  We will request to seal the

3    transcript, Your Honor.

4              THE COURTROOM DEPUTY:  Just the transcript.

5              MS. DAYANANDA:  Yes.

6              MS. DeBLASIO:  Well, and we request that it does

7    not -- that means it won't appear on the docket sheet;

8    correct?

9              THE COURTROOM DEPUTY:  It does not mean that.

10             MS. DeBLASIO:  Okay.  So I would also move to have

11   the fact that the sentencing took place today just not appear

12   on the docketing sheet.  I know a lot of times when I look to

13   see when other people have been sentenced, I can't find it

14   because that --

15             MS. DAYANANDA:  It's a separate request.

16             There are two requests, Your Honor.  One is to seal

17   the transcript.

18             THE COURT:  Right.

19             MS. DAYANANDA:  And counsel is asking that you seal,

20   essentially, the entry in the -- in whatever ECF bounds...

21             THE COURT:  You mean what the sentence was?

22             MS. DAYANANDA:  Correct.

23             We are not making that request, counsel is.

24             THE COURT:  I do not see any justification for that

25   at all.

# SEALED PROCEEDINGS

Proceedings                                    36

1     MS. DeBLASIO:  If I might speak to that.

2         It was just because we don't want anybody to know

3  within the next medium term that he was sentenced and that he

4  has been released.  And that was all for safety, because there

5  are people who are planning in other countries to take their

6  revenge.  ████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████

9         And so we didn't want it to appear that he has been

10 sentenced and what that sentence is.  It's a safety, a

11 precautionary request.

12     THE COURT:  Well, that is the basis on which the

13 application was made to seal the Court and if there is that

14 overriding interest, I will grant it.

15         But when we are notified that Mr. Caicedo has left

16 the country, we may consider just dealing with that docket

17 appropriately.

18     MS. DeBLASIO:  Thank you, Your Honor.

19     THE COURT:  Now, as far as the transcript is

20 concerned, I will grant the application that it be sealed.  I

21 take it there should be a caveat?

22     MS. DAYANANDA:  If the Government requests it.

23     THE COURT:  That the Government and the defense may

24 obtain a copy of it?

25     MS. DAYANANDA:  Yes, Your Honor.

Proceedings                                          37

1          THE COURT:  On their request.  Of course paying the

2    court reporter whatever it is she is entitled to.

3          Is there anything else?

4          MR. GUERRA:  No, Your Honor.

5          MS. DeBLASIO:  No, Your Honor.

6          MR. GUERRA:  Thank you.

7          THE DEFENDANT:  Thank you, Your Honor.

8

9          (Matter concluded.)

10

11                          ooo0ooo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    VB      OCR      CRR
I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
          /s/ Victoria A. Torres Butler   August 15, 2019